# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-20357-STA-tmp |
| | ) | |
| MATTHEW WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IN PART AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant Matthew Williams Motion to Suppress (D.E. # 74) filed on September 30, 2012. This matter was referred to the United States Magistrate Judge for report and recommendation. Pursuant to the order of reference, the Magistrate Judge conducted a suppression hearing and received testimony on November 16, 2012. Following the hearing, the Magistrate Judge issued his written report recommending that the Motion to Suppress be denied (D.E. # 96). On December 17, 2012, Defendant filed timely objections (D.E. # 102) to the Magistrate Judge's report, and the government has responded to the objections (D.E. # 104). For the reasons set forth below, the Magistrate Judge's Report and Recommendation is **ADOPTED** in part, and Defendant's Motion to Suppress is **DENIED**.

## BACKGROUND

The Magistrate Judge's report stated that the facts surrounding the discovery of the evidence

1

at issue are not in dispute, and neither party has raised any specific objection to the Magistrate Judge's proposed findings of fact.[1] Accordingly, the Court hereby adopts the Magistrate Judge's proposed findings of fact as follows.

In September 2009, the DEA began investigating the suspected criminal activities of Matthew Williams, specifically with regard to the sale of narcotics.[2] As part of the investigation, Agent Joshua Pike, along with DEA Agent J.T. Scroggs, developed a confidential source ("CS") in Memphis. The CS told the agents that he could purchase methamphetamine from Williams, who resided in San Diego, California.[3] The agents proceeded to monitor several recorded phone calls between the CS and Williams. Based on the information obtained through the phone calls, the agents decided to have the CS attempt to purchase methamphetamine from Williams.

Some time before December 23, 2009, the agents had the CS place an order with Williams, by phone, for one ounce of methamphetamine. Prior to shipment of the methamphetamine, Williams

---

[1] Defendant has requested that the Court convene a "*de novo* evidentiary hearing . . . to place the appropriate issues, testimony and law" before the Court. Def.'s Objs. to R&R, 4 (D.E. # 102). Although the Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made," see 28 U.S.C. § 636(b)(1)(C), the Court is not required to conduct a *de novo* evidentiary hearing as part of its *de novo* review. *United States v. Raddatz*, 447 U.S. 667, 674 (1980) ("It should be clear that on these dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing."); *see also United States v. Holland*, 980 F.2d 731 (6th Cir. 1992) (following *Raddatz* and holding that a district court need not hold a second evidentiary hearing). Here the Magistrate Judge reported that the relevant facts are not in dispute. Defendant has not argued otherwise, made a specific objection to any of the Magistrate Judge's factual findings, or shown why an evidentiary hearing is required. Based on the record before the Court, the Court finds an additional hearing unnecessary.

[2] Williams became a subject of an investigation by the DEA based on information obtained through a Title III wire tap, which was initiated some time in 2008.

[3] Agent Scroggs was referred to in both parties' briefs as being the other agent involved in the investigation of Williams, but he was not called as a witness at the suppression hearing.

provided the CS with his bank account number. The CS provided the agents with this account number, to which the agents wired payment for the drugs. The CS then told Williams to ship the methamphetamine to an address that had been provided to the CS by the agents (a vacant house in Memphis). On December 23, 2009, Williams shipped the package overnight via Federal Express ("FedEx") to the address provided to him by the CS.[4] On the package, the sender was identified as "Mark Williams" and the recipient was "Dion Williams," both of which were fictitious names.[5] The return address written on the label of the package was a nonexistent address, and the sender's phone number did not belong to Williams. After shipping the package, Williams provided the CS with the tracking number, who in turn provided the number to the DEA agents.

Agent Pike contacted FedEx's security department to request that the package be secured because it contained narcotics. DEA agents stationed in San Diego obtained the package from FedEx security, "overboxed" it, and shipped it overnight to Agent Pike. When the package arrived at the FedEx office in Memphis on December 24, Agent Pike picked it up. He then brought the package to the local DEA office (which was located in the same building as the FedEx office), where he opened the package and discovered several items, including a bottle of whey protein, a blue shirt, a DVD, an electronics kit, and a box with a Christmas ornament. He opened the whey protein bottle and found a plastic baggie containing 27.2 grams of methamphetamine.

In March 2010, the agents had the CS place another order with Williams for one ounce of

---

[4] Williams stipulated at the suppression hearing that he was the person who shipped both packages at issue in this motion.

[5] When asked at the hearing whether Mark Williams was an alias used by Matthew Williams, Agent Pike testified that the CS stated that he had no knowledge of Williams ever using that name. Williams did not present any evidence that he was otherwise known as Mark Williams.

methamphetamine. This time, the CS (again at the instruction of the agents) told Williams to ship the package to an address in Arlington, Tennessee, which was another vacant house.[6] This second package was shipped via United Parcel Service ("UPS") and addressed to a "Monica Specking," which was a fictitious name. The packaging label listed the sender's name as "Dion Williams," the return address as being a UPS store in Murrieta, California, and the sender's phone number as some number not connected to Williams. Williams provided the CS with the tracking number for the package. The agents contacted UPS's security department at the UPS hub in Bartlett, Tennessee, and requested that the package be seized upon arrival.[7] On March 23, 2010, the package arrived at the UPS hub in Bartlett. Agent Charles Andrews obtained the package from that location, and upon opening the package, he discovered 27.6 grams of methamphetamine hidden inside a shampoo bottle.

In his Motion to Suppress, Defendant challenges the DEA's warrantless search of the two packages containing methamphetamine, which Defendant shipped from California to the CS in Memphis. Defendant argues that the contraband was obtained by means of a presumptively unreasonable search. The government responds that Defendant lacks standing to challenge the search because he had no legitimate expectation of privacy in the parcels. Additionally, the government argues that the DEA had consent from the CS to receive and open the packages based on the CS's cooperation in the investigation.

The Magistrate Judge has recommended that the Court deny Defendant's Motion to Suppress.

---

[6] At the hearing, the government did not present any evidence to show that Williams was aware that this address, or the address used for the December 2009 shipment, was to a vacant house. For purposes of deciding Defendant's Motion, the Court will assume that Williams believed the CS would in fact receive the packages at these addresses.

[7] Bartlett is located near Arlington and is the UPS hub for distribution of packages destined for Arlington.

4

The Magistrate Judge first concluded that Defendant had a legitimate expectation of privacy in the two packages, based on Defendant's act of sealing, labeling, and shipping the packages. The Magistrate Judge relied on Sixth Circuit precedent for the proposition that a sender retains an expectation of privacy until a package is delivered.[8] As for the government's argument that Defendant had relinquished his privacy interest by using false information to mail the packages, the Magistrate Judge noted that the Sixth Circuit had never reached the issue but found the Seventh Circuit's decision in *United States v. Pitts* to be persuasive. In that case the Seventh Circuit held that a sender waives his Fourth Amendment rights only where the package is abandoned, "such as where the sender uses a false return address and the recipient refuses to accept delivery."[9] Based on this authority, the Magistrate Judge concluded that the packages were not actually abandoned in this case. The Magistrate Judge's recommended holding was that Defendant had a reasonable expectation of privacy in the packages even though he used fictitious sender and recipient information and that Defendant retained his expectation of privacy until the packages were either delivered or rendered undeliverable.

The Magistrate Judge nevertheless concluded that Defendant lacked Fourth Amendment standing because his expectation of privacy ended when the DEA received the packages. The Magistrate Judge reasoned that the designated recipient of the packages was a CS working with the DEA and that Defendant's privacy expectations ended when the package was delivered, wherever that might occur. Regardless of the fact that Defendant did not know the CS was assisting the DEA in an investigation, Defendant essentially mailed the packages to the DEA. As such, Defendant no

---

[8] M.J.'s R&R 8 (citing *United States v. King*, 55 F.3d 1193, 1196 (6th Cir. 1995)).

[9] *Id.* at 11 (citing *United States v. Pitts*, 322 F.3d 449, 459 (7th Cir. 2003)).

longer had an expectation of privacy once the packages came into the possession of the DEA. The Magistrate Judge proposed then that Defendant lacked Fourth Amendment standing to challenge the DEA's search of the packages and that the Motion to Suppress should be denied for this reason alone.

In the alternative the Magistrate Judge recommended that the DEA had the CS's consent to search the packages. The Magistrate Judge held that the CS had common authority over the packages, much as one co-inhabitant has common authority over shared premises. Thus, Defendant submitted to the CS's common (if not exclusive) authority over the packages when he shipped the packages to the CS with the expectation that the CS would open them. Furthermore, the Magistrate Judge held that the DEA had at least the implied consent of the CS to search the packages.[10] The CS had purchased the narcotics from Defendant using DEA money, permitted the DEA to monitor and record his telephone calls to Defendant, arranged for Defendant to ship the packages to addresses designated by the DEA, and then turned over tracking numbers for the packages to the DEA. Under the circumstances, the DEA had consent to conduct the warrantless search of the packages, and the search did not violate Defendant's Fourth Amendment rights. Therefore, the Magistrate Judge recommended that the Court deny the Motion to Suppress.

Defendant has filed timely objections to the Magistrate Judge's recommended conclusions of law. Defendant seems to contest (though it is not at all clear from his brief) the Magistrate Judge's conclusion that Defendant lacked Fourth Amendment standing to challenge the search once

---

[10] *Id.* at 17-18 (relying on *United States v. Williams*, 106 F.3d 1173, 1177 (4th Cir. 1997)).

the packages were delivered. Defendant argues that "complete delivery" never occurred.[11] According to Defendant, it is for this reason that his case is factually distinguishable from *United States v. Williams*, the Fourth Circuit case on which the Magistrate Judge relied. Specifically, in *Williams* law enforcement intercepted the package with the contraband only after it had arrived and "been delivered to the intended recipient."[12] Here the DEA agents intercepted the packages as soon as Defendant left them with a commercial shipping company for delivery. In other words, the packages were never delivered in this case. Defendant further contends that the Sixth Circuit has never applied the consent doctrine under similar facts and that such a rule would undermine the warrant requirement. Therefore, Defendant argues that the Court should reject the Magistrate Judge's proposed conclusions.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the Court may refer a motion to suppress in a criminal matter to a magistrate judge for the purpose of conducting an evidentiary hearing and to submit proposed

---

[11] Def.'s Objs. to M.J.'s R&R 3 ("Here, the Government plainly circumvented [the] warrant and probable cause requirement and the complete delivery of the subject package at issue.").

[12] *Id.* at 2. Elsewhere in his objections Defendant asserts that the packages in *Williams* "were seized at the intended addresses . . . ." *Id.* Defendant has also cited *United States v. Moreland*, 437 F.3d 424 (4th Cir. 2006), overruled on other grounds by *United States v. Diosdado-Star*, 630 F.3d 359 (4th Cir. 2011). Defendant asserts that *Moreland* stands for the proposition that in order to conduct a search with the implied consent of an informant, the search must occur "in the presence of the actual cooperating informant or confidential source." *Id.* at 2-3. The issue presented in *Moreland* was whether the police had the implied consent of an informant to enter his home and make a warrantless arrest of another party. *Moreland*, 437 F.3d at 428-29. Although *Moreland* addressed the question of implied consent to conduct a warrantless search, the Court finds that the case has little relevance to the questions presented in this case. Therefore, the Court need not address it further.

findings of fact and recommendations for the disposition of the motion.[13] The Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made."[14] However, the Court is not required to conduct *de novo* evidentiary hearing as part of its *de novo* review.[15] After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge.[16] Moreover, the Court need not review, under a *de novo* or any other standard, those aspects of the report and recommendation to which no specific objection is made.[17] Rather, the Court may adopt the findings and rulings of the magistrate judge to which no specific objection is filed.[18]

## ANALYSIS

Based on its *de novo* review of the Magistrate Judge's report and the parties' briefing on Defendant's objections, the Court hereby adopts the Magistrate Judge's recommendation. The Court holds that the warrantless searches in this case did not violate Defendant's Fourth Amendment rights. Before the Court may reach the merits of Defendant's challenge, Defendant has the burden to establish his standing to assert a Fourth Amendment violation.[19] Standing simply refers to "the threshold substantive determination of whether [Defendant] has a reasonable expectation of privacy

---

[13] 28 U.S.C. § 636(b)(1)(B).

[14] § 636(b)(1)(C).

[15] *Raddatz*, 447 U.S. at 674.

[16] § 636(b)(1)(C).

[17] *Thomas v. Arn,* 474 U.S. 140, 150 (1985).

[18] *Id.* at 151.

[19] *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001).

under the Fourth Amendment."[20] The Magistrate Judge held that Defendant had an expectation of privacy in the packages despite the fact that Defendant used false information to ship them. Neither party has objected to this specific conclusion. However, the Magistrate Judge went on to propose that Defendant's expectation of privacy ended when the packages were delivered to the DEA. The Magistrate Judge reasoned that the DEA was the actual addressee of the packages.[21] Or as the government stated in its briefing, "[t]he agents did not require a search warrant in order to open that which was voluntarily sent to them."[22] Defendant argues in his objections that his expectation of privacy continued until delivery and Defendant maintains that delivery did not occur until the packages had come into the physical possession of the informant or arrived at the locations to which they were shipped.[23] According to Defendant then, he has standing to challenge the searches because his privacy interest in the packages was never extinguished.

For purposes of the Motion to Suppress, the Court need not resolve the issue of Defendant's standing to challenge the searches of the packages. Assuming (without deciding) that Defendant has

---

[20] *Id.*

[21] M.J.'s R&R 15 ("That Williams was unaware of the relationship between the CS and the DEA does not negate the fact that the packages were ultimately going to the DEA.").

[22] Pl.'s Second Am. Resp. to Def.'s Mot. to Suppress 8, Oct. 24, 2012 (D.E. # 82).

[23] It is undisputed that the shipping addresses Defendant used were the street addresses of vacant homes in the Memphis area and that the DEA had given the addresses to the informant. There is no evidence that the CS resided or was ever even present at these addresses. The fact that the DEA arranged for the controlled buys to be delivered to an address of its own choosing arguably supports for the Magistrate Judge's conclusion that the DEA was always going to be the actual recipient of the narcotics, not the CS. The Court considers these facts as part of its analysis below as well.

standing,[24] the Court holds that the DEA had the consent of the CS to accept delivery of the packages and conduct the warrantless searches of their contents. A warrantless search of effects such as letters and sealed packages is "presumptively unreasonable" unless an exception to the warrant requirement applies.[25] One such exception is consent.[26] Whether law enforcement obtained voluntary consent to a search is a factual issue to be determined from the totality of all the circumstances.[27] Consent must be "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion."[28] The government bears the burden of demonstrating voluntary consent by a preponderance of the evidence, through "clear and positive testimony."[29]

Applying these standards to the facts in this case, the Court adopts the Magistrate Judge's conclusion and holds that the DEA had the consent of the CS to accept delivery of the packages and

---

[24] *United States v. Stubblefield*, 683 F.3d 502, 509 (6th Cir. 2012) (assuming without deciding that a defendant had Fourth Amendment standing to challenge a police search and seizure); *United States v. Lloyd*, 10 F.3d 1197, 1209 n.13 (6th Cir. 1993) (same); *United States v. French*, 974 F.2d 687, 693 (6th Cir. 1992) ("Because we find that French's consent to search is effective as to Foster, we will assume, without deciding, that Foster has standing to challenge the search of the Mercedes.").

[25] *United States v. Jacobsen*, 466 U.S. 109, 114 (1984).

[26] *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."). The Magistrate Judge concluded (and Defendant has not specifically objected to this portion of the report) that the CS had common authority over the packages. Therefore, the Magistrate Judge's recommendation on this point is adopted.

[27] *United States v. Bowser*, No. 11-2616, 2012 WL 5861761 (6th Cir. Nov. 20, 2012) (citing *United States v. Erwin,* 155 F.3d 818, 822 (6th Cir. 1998)( *en banc*)).

[28] *United States v. Lucas,* 640 F.3d 168, 174 (6th Cir. 2011)

[29] *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009) (quoting *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999)).

search for methamphetamine. It is undisputed that the CS cooperated with the DEA in their investigation of Defendant's methamphetamine sales. The CS consented to the recording of his telephone calls to Defendant about the drug purchases. The DEA itself actually wired the funds for the controlled buys of the methamphetamine to an account designated by Defendant. The CS followed the DEA's instructions for having the packages shipped to addresses chosen by the DEA and then gave the DEA tracking numbers for the packages. There is no evidence that the packages were shipped to an address where the CS actually lived or resided or where he might otherwise personally take delivery of them. Under these facts, the Court concludes that the DEA had the implied (if not actual) consent of the CS to receive the packages shipped by Defendant and search their contents for methamphetamine.[30] Therefore, the DEA's warrantless search of the packages did not run afoul of the Fourth Amendment.

Defendant raises two arguments with regard to the implied consent issue. Defendant first discusses *United States v. Williams*, the Fourth Circuit case cited by the Magistrate Judge in his report. In *Williams*, the Fourth Circuit concluded that the DEA's warrantless search of packages sent by the defendant did not violate his constitutional rights because the agents had the implied consent of a confidential informant who had arranged the controlled buy.[31] Defendant asserts that *Williams* is distinguishable on its facts. Defendant emphasizes that the packages in *Williams* were

---

[30] Although Defendant has not raised the issue, the Court also finds that the scope of the DEA's search in this case was clearly within the scope of the implied consent. *United States v. Gant*, 112 F.ed 239, 242 (6th Cir. 1997). The DEA searched only the two packages Defendant shipped to the CS, shipments for which the CS volunteered tracking numbers.

[31] *Williams*, 106 F.3d at 1177-78.

11

actually "delivered to the intended recipient" or "were seized at the intended addresses."[32] Like the CS in this case, the informant in *Williams* worked with a DEA task force to investigate mail-order methamphetamine sales originating in California. Like the CS here, the informant made recorded telephone calls to an individual in California, arranged for the purchase of methamphetamine, and then had the narcotics sent by mail. Unlike the packages in this case, the contraband in *Williams* was sent to a post office box in Virginia where a DEA "agent retrieved the package."[33] However, the fact that the drugs may have been "seized at the intended address[]" did not figure into the Fourth Circuit's analysis of whether the DEA had the implied consent of the informant to search the package. Defendant has not shown why this factual distinction is relevant or why it should affect the Court's holding that the CS gave his implied consent for the DEA to receive the packages and search them for methamphetamine. In fact, actual delivery to the CS arguably was not necessary in this case because the DEA already had implied consent to take delivery of the packages. The Court finds then that Defendant's argument about *Williams* is unconvincing.[34]

Defendant next argues that allowing the informed consent rule to save the warrantless searches in this case would effectively undermine the principles set out by the Supreme Court in

---

[32] Def.'s Objs. to M.J.'s R&R 2.

[33] *Williams*, 106 F.3d at 1175.

[34] Other cases Defendant cites in his objections actually undermine his argument. *E.g. Walter v. United States*, 447 U.S. 649, 656 (1980) ("When an official search is properly authorized—whether by consent or by the issuance of a valid warrant—the scope of the search is limited by the terms of its authorization."); *United States v. Kurck*, 552 F.2d 1320, 1321 (8th Cir. 1977) ("Stronger evidence of implied consent exists here, however, arising from the cooperative relationship established between the informant and the arresting officers whereby the informant undertook to purchase counterfeit money with funds supplied by government agents, and agreed to and did utilize his automobile in leading the government agents to the counterfeiters.").

*United States v. Jacobsen*, 466 U.S. 109 (1984). The Court disagrees. As previously discussed, *Jacobsen* stands for the proposition that a warrantless search of effects such as letters or sealed packages is presumptively unreasonable. The defendant in *Jacobsen* had shipped a package via FedEx, which was damaged in transit. FedEx employees noticed a white, powdery substance in the package and summoned the DEA to investigate. The DEA agent conducted a warrantless field test of the substance and confirmed that it was cocaine. The Court finds that the factual scenario in *Jacobsen* is clearly distinguishable from the facts of this case. The defendant in *Jacobsen* was apparently shipping narcotics by FedEx to a purchaser while Defendant here mailed methamphetamine to a CS working with the DEA. More importantly, there was no indication in *Jacobsen* that the DEA ever had consent from the sender or the intended recipient to inspect or test the contents of the damaged FedEx package. Therefore, *Jacobsen* does not alter the result the Court reaches in this case that the DEA had consent to conduct the warrantless searches of Defendant's packages. As such, the searches were not unreasonable.

Therefore, the Magistrate Judge's recommendation is **ADOPTED** in part, and Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 25, 2013.